**HILL v. SCHULTZ.**

No. 12360.

Court of Civil Appeals of Texas. Galveston.

April 17, 1952.

Ernest S. Fellbaum, Robert B. Parker, of Houston, for appellant.

J. A. Collier, Morris Pepper and Fred Lewis, all of Houston, for appellee.

CODY, Justice.

This was an action by appellee Schultz, who purchased a Dodge truck from appellant Hill, doing business as Hill Motor Company, an automobile dealer, for damages for the alleged wrongful conversion of said truck. Upon answers which were favorable to appellee, on special issues submitted to the jury, the court rendered judgment that appellee recover from appellant damages in the sum of $845.

The evidence was to the effect that the cash price on said truck was $595. However, appellee did not pay cash therefor, but gave a "trade-in" valued by the parties at $245, which would have left a balance of cash due, had the transaction been a cash one, of $350. But, appellee purchased the truck on a time basis and executed his promissory note for the balance in the sum of $489.96, payable in twelve equal consecutive monthly installments of $40.83 each, and secured the payment thereof with a chattel mortgage on said truck.

The remaining facts with respect to the transaction are highly controverted between the parties. According to appellee's version, he and appellant got into a dispute because the appellant found that he could not negotiate appellee's note to the finance company, and appellant demanded that appellee give him in lieu of the aforesaid note for $489.96, payable in twelve months, a promissory note for $500, payable in ten monthly installments of $50 each. It is further appellee's version that upon March 14 or 15, 1950, at a time when appellee's note was not in default, an oral agreement was entered into by and between the parties whereby appellee was to pay or mail a check to appellant for the sum of $350 on not later than March 18, which was on a Saturday, said agreement transforming the transaction into a cash one and satisfying the indebtedness due on said truck.

Appellant predicates his appeal upon four points, complaining (1) that the court should have instructed a verdict for appellant, (2) that the court's charge was wrong in certain particulars, (3) that the evidence was insufficient to support the jury's finding in answer to special issue No. 1, and (4)

that the evidence was insufficient to support the answer to special issue No. 3.

The undisputed evidence showed that the note for $489.96 contained the usual provisions that in case any one or more installments became in default the owner of the note might, at his option, mature all of said unpaid installments; and the chattel mortgage contained the usual provisions that in case of default appellant might take possession of the truck without process, etc. The court, among other special issues, submitted to the jury special issues Nos. 1, 2 and 3, which the jury answered as indicated:

"Special Issue No. 1—Do you find from a preponderance of the evidence that on either March 14th or March 15th, 1950, it was orally agreed between the Plaintiff, T. R. Schultz, and the Defendant, J. W. Hill, that the Plaintiff would give to the Defendant $350.-00 on March 17th or March 18th, 1950, or mail a check for $350.00 to the Defendant on March 17th or March 18th, 1950, in payment of the $489.96 note executed February 14th, 1950, arising out of the purchase of the Dodge pickup truck involved in this suit and that said $350.00 would be accepted by the Defendant in full payment of said note?

"Special Issue No. 2—Do you find from a preponderance of the evidence that the Plaintiff, T. R. Schultz, mailed a check for $350.00 to the Defendant on March 18th, 1950?

"Special Issue No. 3—Do you find from a preponderance of the evidence that the Deputy Sheriff, Sherman Fricks, on March 18, 1950, intimidated Calvin Schultz, brother of the Plaintiff, into allowing the Defendant to take possession of the Dodge pickup truck involved in this suit, when he would not have otherwise allowed such taking of possession?

"By the term "intimidate", as used in the foregoing special issue, is meant * * *."

To which issues the jury answered "We do."

The following conversation over the phone, according to the testimony of appellee, took place between him and appellant on the 14th or 15th of March, 1950. It is this evidence upon which appellee relies as constituting an oral agreement between the parties by which the transaction was transformed into a cash transaction, by the terms of which oral agreement appellee was to mail to appellant a cashier's check for $350, not later than Saturday, March 18, 1950. It is appellant's contention that said testimony is insufficient to support the answer of the jury to special issue No. 1 and insufficient to constitute a new oral contract for cash payment, to take the place of the written contract under which a balance of $489.96, payable in twelve months, was provided for by the promissory note and written contract aforesaid.—The testimony referred to is as follows:

"Q. Tell us about that conversation * * *. A. We got to talking about the car and the truck, and got to talking about the papers, and I asked him why I never had got my papers; he said they would be mailed to me, and I asked him how much it cost to pay the truck off, how much did I owe him. He said $350.00, and I said, I will come down there Friday or Saturday and give you $350.00, or mail you a check for $350.00. He said, it will be $400.00. I want $50.00 interest on $350.00.

"Q. What did you tell him when he said that? A. I told him I would not pay it.

"Q. Did you tell him why you did not want to pay $50.00 on $350.00? A. I told him it was too much.

"Q. Then what did he say? A. I told him I would come down either Friday or Saturday and give him $350.00 or mail him a check for it.

"Q. What did he say to that? A. He said O.K.

"Q. He said O.K.? A. Yes, sir.

"Q. (By Mr. Pepper) You say then he said O.K.? A. Yes, sir.

"Q. Was there any further conversation there at that time? A. No, sir; that is all."

It was not disputed that appellee mailed a cashier's check to appellant on Saturday, March 18, 1950, which was by appellant received on the following Monday, which was not cashed by appellant, but returned by him to appellee's lawyer.

Appellee's evidence, though hotly contested by appellant, was clearly sufficient to support the jury's affirmative answer to Special Issue No. 1. It thus appears that on March 14th or 15th, 1950, at the time when appellee was not in default, the parties entered into an oral agreement by the terms of which appellee agreed to pay appellant the lump sum of $350, in lieu of the promissory note for $489.96 in twelve equal installments. The evidence further shows that appellee duly tendered performance of the oral contract, in strict conformity with its terms. There is no contention here made by appellant that the oral agreement was not based upon adequate consideration. It is appellant's contention that the oral agreement did not constitute a novation, and failed to qualify as an accord and satisfaction. Without citing the authorities relied upon by appellant with respect to the subjects of novation or accord, we present his position in the language of his brief, as follows:

"* * * in order for the judgment to stand, such oral agreement must in law constitute novation or accord and satisfaction, for unless it fulfills the legal requirements of the one or the other it is obvious that the contract of the parties must be evidenced by the written note and chattel mortgage * * *. The oral agreement cannot constitute a novation because it lacks mutuality and the certainty and definiteness in respect to consideration, * * *. In respect to accord and satisfaction, it is likewise beyond the bounds of reason to conclude that (sic) Appellee could, under the facts in evidence, have entertained any idea or thought to accept any promise in lieu of his indebtedness as evidenced in the written instrument, and that, therefore, there can be no accord and satisfaction because satisfaction is totally lacking. * * *"

It is stated in 31 Tex.Jur. 386, "However, * * * in some cases it is difficult to distinguish the two [i. e. novation, and accord and satisfaction], since a new promise may, by agreement to that effect, operate as satisfaction of the original obligation and be a substitute therefor." There is no need in this case to be extreme to determine whether the oral contract constituted a novation or an accord and satisfaction. This, because at the time the oral contract was made the first installment payment either had not matured, or had not become in default. The evidence shows that both parties had become dissatisfied with each other. And while the motivation of parties in making contracts is not ordinarily a proper subject of inquiry for a court, we confess we see nothing unreasonable in the action of the parties to a credit transaction, after they have become mutually dissatisfied, and at an early state, transforming the transaction into one for cash, retroactively. Under the facts of this case, appellee was entitled to discharge his obligation to appellant at the time and in the method orally agreed upon. The provision in the note for $489.96, for the acceleration of the maturity of the installment payments, was not automatic, but took effect only by the exercise of the option of the owner of the note. By entering into a new oral agreement to pay off his obligation to appellant in the lump sum of $350 and performing it, appellee did not put it in the power of appellant to compel him presently to pay the $489.96 in a lump sum.

Appellant's assault on the judgment awarding damages for the illegal seizure of the truck is without merit. As already stated, we will not pass on whether the oral contract was a novation or an accord and satisfaction. In any case, it was a contract which the parties could legally enter into. If the contract was an accord and not a satisfaction, the accord provided that it could be satisfied in the manner and at the time which appellee performed same. The oral contract, at the very least, suspended any rights which appellant might have under the written obligation in accordance with said accord. Therefore, ap-

pellant could not know until he received his mail on Monday whether or not he had any right to accelerate the maturity of ·the promissory note, or any rights under the mortgage.

'We· overrule appellant's points and affirm the judgment.